IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EMILIO TORRES,

    Petitioner,                               No. CIV S-07-1689 LKK CHS P

    vs.

SHARON PROSPER,

    Respondent.                  <u>FINDINGS AND RECOMMENDATIONS</u>

                                   /

## I.  INTRODUCTION

Petitioner is a state prisoner proceeding through counsel with an application for writ of habeas corpus pursuant to 28 U.S.C. §2254.  Petitioner challenges his robbery conviction in the Sacramento County Superior Court, case 00F00392, which was entered pursuant to a negotiated plea agreement on various charges in three separate cases consolidated for sentencing. There was no direct appeal of the robbery conviction.

According to petitioner, the basis for the petition is newly discovered evidence. He has submitted declarations from the robbery victims and witnesses indicating that he was not present during the robbery.  These declarations contradict previous statements made by the same individuals during the police investigation.

/////

1

Based on the arguments presented and applicable law, petitioner's claims are properly identified as two separate claims relating to the voluntariness of his plea and a third claim relating to the destruction of evidence. Specifically, petitioner alleges that (1) the prosecution withheld exculpatory evidence in violation of *Brady v. Maryland*, causing him to enter into an involuntary plea of no contest; (2) he received ineffective assistance of counsel, causing him to enter into an involuntary plea of no contest; and (3) the destruction of physical evidence after entry of his no contest plea violated his due process rights. After careful review, the undersigned recommends the petition be denied.

## II.  PROCEDURAL BACKGROUND

On December 18, 2001, an amended consolidated complaint was filed in cases 00F0227 and 00F00392 in the Sacramento County Superior Court. (Supp. CT at 38-48.[1]) Petitioner was charged with a total of 27 counts including the robbery count at issue in this petition, in addition to multiple counts of possession for sale of narcotics, unauthorized use of personal identifying information to obtain credit, acquiring access cards of four or more persons with the intent to defraud, vehicle theft, residential burglary, receiving stolen property, dissuading a witness, failure to appear, and various firearm charges. (Supp. CT at 38-48.) A preliminary hearing was held that day on all 27 counts. At the hearing, police officers testified as to the statements of the various victims and witnesses and the physical evidence. Petitioner was bound over for trial.

Subsequently, in still another case, 02F01623, a jury convicted petitioner of second degree burglary, receiving stolen property, and possession of burglar tools. (C044132 opinion at 1.[2])

---

[1] Clerk's Supplemental Transcript on Appeal is lodged in this record as respondent's exhibit (10/25/07).

[2] C044132 opinion is lodged in this record as respondent's exhibit 5 (10/25/07).

These three cases were consolidated for sentencing purposes. (RT at 39.[3]) On April 1, 2003, petitioner informed the court that he intended to enter into a negotiated plea agreement with respect to seven counts in the amended consolidated complaint of cases 00F0227 and 00F00392, on the condition that the other counts, as well as charges in four other trailing cases, be dismissed. (RT at 2-4.) The plea agreement provided for a stipulated sentence of 15 years on all pending charges, including those on which petitioner had been convicted by a jury. (RT at 1-4.) On May 21, 2003, petitioner was sentenced to 5 years imprisonment for the robbery count. (RT at 50.) He received a total sentence of 15 years for all counts, in accordance with the negotiated plea agreement. (RT at 50-52.)

On April 12, 2005, petitioner brought the claims presented in this federal petition in a petition for writ of habeas corpus in the Sacramento County Superior Court. The petition was denied on June 17, 2005. (05F03343 opinion.[4]) Petitioner sought relief in the Court of Appeal, Third District, and California Supreme Court; those petitions were likewise denied. (C051633 order and S144911 order.[5])

### III.  FACTUAL BACKGROUND

Of the seven counts to which petitioner pleaded no contest in consolidated cases 00F00392 and 00F0227, he challenges only his conviction for robbery in this petition. The factual basis for the robbery count was set forth by the prosecutor at the preliminary hearing as follows:

> On or about December 21st of the year 2000, while in the County of Sacramento, the defendant took personal property from Jonathon Tisdale, Christie Nixon, Randy Blackburn and Lisa Richards... by means of force or fear... with the intent to

---

[3] Reporter's Transcript on Appeal is lodged in this record as respondent's exhibit (10/25/07).

[4] 05F03343 opinion is lodged in this record as respondent's exhibit 9 (10/25/07)

[5] The orders on cases C051663 and S144911are lodged in this record as respondent's exhibits 11 and 13 (10/25/07), respectively.

3

permanently deprive them of that property. (RT at 27.) Police officers who had investigated the robbery testified as to various statements given by the victims and witnesses, as summarized below.

### Jonathan Tisdale

Officer Souza testified that Tisdale had previously provided police with information regarding petitioner's involvement in credit card fraud charges. Tisdale had shown police where petitioner lived, and a subsequent search of the residence yielded evidence regarding the credit card fraud as well firearms, drugs, and a vehicle which had been reported as stolen. (Supp. CT 325-28; 367-81.)

Officer Francois testified that Tisdale also implicated petitioner in the subsequent robbery of his residence. Specifically, Tisdale reported that petitioner and five or six other men forced their way into his home on December 21, 2000, carrying four pages of a sheriff's report which contained Tisdale's statements implicating petitioner in the credit card fraud. According to Officer Francois, petitioner told Tisdale to "fix this" (referring to the sheriff's report) and another man smashed Tisdale's head into the kitchen counter, after which the men took several items of property from the home. The pages of the sheriff's report were left at the scene. Petitioner told Tisdale he would kill him if he called the police. Officer Francois testified that Tisdale was afraid of petitioner and fearful that petitioner would retaliate if Tisdale spoke to police. (Supp. CT 431-40.)

### Matthew Tisdale

Officer Souza testified that Matthew Tisdale reported that he was in the garage and did not see petitioner during the robbery but did hear petitioner's voice. (Supp. CT at 475.)

### Christy Nixon

Officer Fuenzalida testified that Nixon reported she was present during the robbery and that petitioner grabbed her when she tried to go upstairs and told her to sit on the couch. (Supp. CT at 450-53.)

1      Officer Souza testified that Nixon told him that she did not see anyone during the
2 robbery and only heard voices, but that Jonathan Tisdale later told her that petitioner was there.
3 Officer Souza testified that Nixon appeared to be frightened of petitioner.  (Supp. CT at 470-71.)

4      Randy Blackburn

5      Officer Souza testified that Blackburn reported that he was present during the
6 robbery, and his cell phone was stolen, however he could not positively identify any of the
7 robbers from a photographic lineup.  (Supp. CT at 461-63; 473.)

8      Lisa Richards

9      Officer Souza testified that Richards stated that she was present during the
10 robbery and she saw one man hand paperwork to Tisdale and another beat Tisdale's head onto
11 the kitchen counter.  Richards did not identify anyone from a photographic lineup.  (Supp. CT at
12 464-67.)

13      Subsequent Declarations

14      In support of his present claims, petitioner has obtained and submitted signed
15 declarations from each of these five individuals whose statements regarding the robbery of
16 Tisdale's residence were used in evidence against petitioner at his preliminary hearing.  (Petition
17 exhibits at 26-27; 29-30; 33-34; 43-44; and 46-47.)  The declarations contradict much of the
18 testimony given by police regarding the prior statements of the robbery victims and witnesses.
19 Most importantly, the declarations of Jonathan Tisdale and Lisa Richards indicate that petitioner
20 was not present or involved in the robbery, while the remaining witnesses state in their
21 declarations that they never told police officers that petitioner was present during the robbery.
22 Petitioner claims the police falsified their reports and gave perjured testimony at his preliminary
23 hearing regarding the declarants' prior statements.  Petitioner alleges that the declarations
24 constitute newly discovered evidence that he is innocent of the robbery charge.
25 /////
26 /////

IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the interpretation or application of state law.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149-50 (9th Cir. 2000); *Middleton*, 768 F.2d at 1085.  Nor can habeas corpus be utilized to try state issues *de novo*.  *Milton v. Wainwright*, 407 U.S. 371, 377 (1972).

This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999).  Under AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

The "contrary to" and "unreasonable application" clauses of §2254(d)(1) are different.  Under the "contrary to" clause of §2254(d)(1), a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams*, 529 U.S. at 405.  As the Third Circuit has explained, "it is not sufficient for the petitioner to show merely that his interpretation of

Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent *requires* the contrary outcome." *Matteo v. Superintendent*, *SCI Albion*, 171 F.3d 877, 888 (3rd Cir. 1999) (en banc) (emphasis in original). The state court is not required to cite the specific controlling test or Supreme Court authority, so long as neither the reasoning nor the result of the state court decision contradict same. *Early v. Packer*, 537 U.S. 3, 8-9 (2002).

The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case. *Williams*, 529 U.S. at 410. The focus of this inquiry is whether the state court's application of clearly established federal law is objectively unreasonable. *Id*. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*.

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), *cert. dismissed*, 538 U.S. 919 (2003). A court may deny a petition for writ of habeas corpus on the ground that relief is precluded by 28 U.S.C. §2254(d) without addressing the merits of the claim. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).

V.   ANALYSIS OF PETITIONER'S INVOLUNTARINESS CLAIMS

Petitioner's counsel states that "the underlying basis for habeas corpus relief is newly discovered evidence." (Petition at 2.) To the extent the petition can be construed as presenting a freestanding claim of newly discovered evidence or actual innocence based upon the declarations submitted, relief must be denied. "[T]he existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on habeas corpus."

*Townsend v. Sain*, 372 U.S. 293, 317 (1963) (*overruled on other grounds* by *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992)).  Newly discovered evidence provides a basis for federal habeas corpus relief only where it bears on the constitutionality of the petitioner's conviction.  *Herrera v. Collins*, 506 U.S. 390, 400 (1993).  "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."  *Id*.; *see also Coley v. Gonzales*, 55 F.3d 1385, 1387 (9th Cir. 2005); *Cooper v. Woodford*, 358 F.3d 117, 1124 (9th Cir. 2004).

      Moreover, petitioner waived his right to assert a claim of newly discovered evidence by entering a plea of no contest.  *See Gomez v. Berge*, 434 F.3d 940, 943 (7th Cir. 2006) (holding that most antecedent constitutional claims are waived by the entry of a no contest plea, but that a double jeopardy claim is not waived), *cert denied*, 547 U.S. 1168 (2006).  A plea of no contest "is an admission of guilt for the purposes of the case."  *Hudson v. Unites States*, 272 U.S. 451, 455 (1926).  When a criminal defendant has solemnly admitted in open court that he is guilty of a charged offense he may not thereafter raise independent claims relating to deprivation of constitutional rights that occurred prior to entry of the plea, but may only attack the voluntary and intelligent character of the plea.  *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  Assuming petitioner's no contest plea was voluntary and intelligent, he has waived his right to assert a claim of newly discovered evidence.  The analysis of this claim, therefore, must center on the voluntariness of his plea.

    A.  BRADY VIOLATION

      To be valid, a plea must be knowing, intelligent, and voluntary.  *Brady v. United States*, 397 U.S. 742, 748 (1970).  Petitioner alleges that his no contest plea was involuntary because he entered into it relying upon police reports which he claims were false or misleading.  (Petition at 8.)  Petitioner claims he was "coerced" into changing his plea of not guilty based on his belief that police had accurately reported the victim and witness statements implicating him

in the robbery of Tisdale's residence, and because he "feared that the victim and witnesses intended to testify falsely against him." (Petition at 9.)

The last reasoned state court decision for AEDPA purposes is the opinion of the Sacramento Superior Court. (05F03343 order.) Petitioner urges that the Sacramento Superior Court decision denying this claim on the merits is not entitled to deference under AEDPA because it "fails to set out any federal standard or analyze the case from a federal perspective." (Petition at 22.) As set forth above, however, a state court is not required to use the federal standard or analyze the case from a federal perspective in order to be entitled to deference. *See Early v. Packer*, 537 U.S. at 8-9. The decision will be entitled to deference so long as neither its reasoning nor result contradict clearly established federal law as determined by the Supreme Court. *See Id*. Petitioner also argues that "the factual basis for the decision no longer exists" since one of the reasons given by the state court in denying the claim was that petitioner had not submitted a declaration from each robbery victim, as he has done in this federal petition. (Petition at 22.) A review of the state court decision demonstrates that this was just one of three reasons set forth by the court as precluding relief under California law.[6] (C051633 order at 3.) For the reasons that follow, the state court's rejection of the claim under California law is not contrary to, or an unreasonable application of, Supreme Court precedent.

In *Brady v. Maryland*, the United States Supreme Court held that the suppression before trial of requested evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. 373 U.S. 83 (1963). In so holding, the Court reasoned that "[a] prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant." *Id*.

---

[6] The Sacramento County Superior Court held that petitioner failed to show all requirements under California law for a petition for writ of error coram nobis, or, in other words, a petition to withdraw a plea after judgment has been entered.

at 87-88. The *Brady* duty has been extended to impeachment evidence as well as exculpatory evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985). In addition, *Brady* suppression occurs when the government fails to turn over evidence that is "known only to police investigators and not to the prosecutor." *Kyles v. Whitley*, 514 U.S. 419, 438 (1995).

As respondent asserts (Memorandum at 19), the United States Supreme Court has never extended the *Brady* duty to disclose exculpatory evidence to the context of a guilty plea. *See McCann v. Mangialardi*, 337 F.3d 782, 787 (7th Cir. 2003) (noting the Supreme Court has yet to address whether *Brady* disclosures are required outside the context of a trial, and therefore refraining from deciding the issue whether *Brady* may be invoked to challenge the voluntariness of a plea when given without knowledge of undisclosed exculpatory evidence). In *United States v. Ruiz*, the Court addressed a similar issue: "whether the Constitution requires... preguilty plea disclosure of *impeachment* information." 536 U.S. 622, 629 (2002) (emphasis added). The Court held that it does not, thus the withholding by prosecution of impeachment information prior to a defendant's plea entry does not violate *Brady*. *Id*.

In *McCann*, the Seventh Circuit concluded that the Supreme Court's holding in *Ruiz* "strongly suggests" in dicta that it would find a due process violation if prosecutors had withheld exculpatory information, as opposed to impeachment information, from the defendant prior to his guilty plea. 337 F.3d at 787. This notion is, at best, implied by the *Ruiz* majority in dicta, but not clearly established for AEDPA purposes. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000) (the phrase clearly established Federal law, as determined by the Supreme Court of the United States "refers to the holdings, as opposed to the dicta of the Court's decisions"). It is unclear whether the Supreme Court would find a *Brady* violation based on the withholding of exculpatory information prior to entry of a guilty plea. As noted by Justice Thomas in his concurring opinion, "[t]he principle supporting *Brady* was 'avoidance of an unfair trial to the accused.' That concern is not implicated at the plea stage regardless." *Ruiz*, 536 U.S. at 634 (Justice Thomas, concurring).

In any event, the Supreme Court has never determined whether *Brady* requires disclosure of exculpatory evidence before entry of a guilty plea as petitioner urges, and existing Supreme Court precedent does not dictate that result. Accordingly, the Sacramento County Superior Court's decision rejecting petitioner's claim under California law is not contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

This claim may also be denied on the merits. The Ninth Circuit has held that a defendant challenging the voluntariness of a guilty plea may assert a *Brady* claim. *Sanchez v. Unites States*, 50 F.3d 1448, 1453 (9th Cir. 1995). Petitioner must show that exculpatory material was not disclosed and a reasonable probability exists that, but for the failure to disclose, he would have refused to plead and instead would have gone to trial. *Id*. at 1545. The test for whether petitioner would have chosen to go to trial is an objective one that centers on the likely persuasiveness of the withheld information. *Id*.

Respondent asserts that the alleged "newly discovered evidence" is suspect, lacks credibility, and is insufficient to overcome the sworn testimony of the police officers who originally took the declarants' statements. Respondent asserts that the only reasonable explanation for the declarants having changed their stories is that they are afraid of petitioner. (Response at 21.)

The alleged newly discovered evidence submitted by petitioner relates only to one count, the robbery, in the amended consolidated complaint. Had the robbery victims and witnesses testified at trial that petitioner was not present during the robbery, police officers would have testified as to their prior inconsistent statements implicating petitioner. There was also independent evidence linking petitioner to the robbery. An identification technician for the Sacramento Police Department testified at the preliminary hearing that he was 100 percent certain that petitioner's fingerprint appeared on the portion of the sheriff's report left at the crime scene by the robbers. (Supp. CT 312-315.) One of the items stolen during the robbery was

found during a subsequent search of petitioner's former[7] residence.  (Supp. CT 420, 464, 474.)  Police also found a copy of the sheriff's report of the investigation regarding petitioner's involvement in credit card fraud, as reported by Tisdale.  (Supp. CT 476.)  The sheriff's report found in petitioner's former residence was missing the four pages that were left at Tisdale's residence after the robbery.  (Supp. CT 478.)

In addition, petitioner's plea of no contest to the robbery charges in case 00F10227 was part of a negotiated plea agreement disposing of 27 counts in that case and case 02F01623, which were amended and consolidated for sentencing.  (Petition at 1; Supp. CT 38-48.)  Petitioner had already been convicted by a jury of second degree burglary, receiving stolen property and possessing burglar tools in case 02F01623.  (RT at 1.)  The negotiated plea agreement provided for a maximum stipulated sentence of 15 years, and just one strike[8], for the three counts on which he had been found guilty and the seven counts to which he pleaded no contest.  (RT at 2-4.)  Based on the plea agreement, all remaining counts were dismissed.  (RT at 55.)  Had petitioner proceeded to trial and been found guilty on all charges, he could have received a maximum sentence of 37 years and 8 months, and incurred multiple strikes.  (RT at 4-5; 16.)  Even assuming that exculpatory evidence was withheld as petitioner alleges, there appears no reasonable probability that petitioner would have refused to plead and proceeded to trial on the robbery charges had the information been disclosed.  Petitioner is not entitled to relief on his claim challenging the voluntariness of his plea based on the alleged *Brady* violation.

B.  INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner further asserts that his plea was involuntary because he received ineffective assistance of counsel.  A showing of ineffective assistance of counsel has two

---

[7] Petitioner and his mother have submitted declarations claiming that he had moved from this residence back into his mother's home.  (Traverse at 5.)

[8] Under California's three strikes law, a defendant convicted of a felony who has previously been convicted of two or more serious or violent felonies must receive an indeterminate life imprisonment term.  *See* Cal. Penal Code §667.

12

components.  First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  After the acts or omissions that are alleged not to have been the result of reasonable professional judgment are identified, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.  *Id*. at 690; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).  In assessing an ineffective assistance of counsel claim, "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance,'" *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (*quoting Strickland*, 466 U.S. at 689), and that counsel "exercised acceptable professional judgment in all significant decisions made."  *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (*citing Strickland*, 466 U.S. at 689).

   The second factor required for a showing of ineffective assistance of counsel is actual prejudice caused by the deficient performance.  *Strickland*, 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  *Id*.; *see also Williams*, 529 U.S. at 391-92; *Laboa v. Calderon*, 224 F.3d 972, 981 (9th Cir. 2000).

   The two part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel.  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  In this context, a petitioner is denied effective assistance of counsel when counsel's plea advice resulted in an involuntary plea.  *See Tollet v. Henderson*, 411 U.S. at 267-68.  With respect to the objective reasonableness test, it is not sufficient to show that counsel in retrospect may not have correctly appraised the significance of certain historical facts or that if counsel had pursued a certain factual inquiry such pursuit would have uncovered a possible constitutional infirmity in the proceedings.  *Id*. at 267.  The "reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions," *Strickland*, 466 U.S. at

691, including the defendant's decision to plead guilty. *Langford v. Day*, 110 F.3d 1380, 1386-87 (9th Cir. 1996). Counsel's duty to investigate will be influenced by what information the defendant conveys to counsel and there is no duty to investigate when the defendant does not convey facts warranting an investigation to his counsel. *Langford*, 110 F.3d at 1387. To show prejudice in the context of a guilty or no contest plea, a petitioner must demonstrate a reasonable probability that, but for counsels' errors, he would not have pleaded but would have insisted on going to trial. *Hill*, 474 U.S. at 59; *Langford*, 110 F.3d at 1388.

Petitioner argues that he was denied effective assistance of counsel because counsel relied on information from the prosecutor that was allegedly false and "wholly failed to investigate the alleged testimony of witnesses or the alleged physical evidence." (Petition at 10-11.) Petitioner stated in his declaration submitted in support of his petition that "I was present at my preliminary hearing and... listened to police officers testify as to what other witnesses allegedly told them and what physical evidence allegedly existed against me on the robbery charge." (Petition at 24.) Nowhere in his original federal petition or the declaration attached to that petition did petitioner state that he ever expressed to counsel that any of the evidence summarized at the preliminary hearing was inaccurate or untrue or that further investigation was warranted.[9] If he never did so, counsel had no duty to independently investigate. *Langford*, 110 F.3d at 1388. Moreover, there is no rule that requires an attorney to interview all prospective witnesses. *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001).

Petitioner decided to plead no contest. Unlike decisions about trial strategies, the decision to plead no contest was petitioner's to make. His decision to plead no contest is a factor that bears on the reasonableness of his counsel's actions. *Langford*, 110 F.3d at 1388 ("At least in the face of [petitioner's] determination to plead guilty, [counsel] was not bound to investigate the matter further.") Given petitioner's decision to plead no contest, counsel's alleged failure to

---

[9] Petitioner submitted another declaration with his traverse claiming that he did tell his counsel "over and over" that he was not guilty of the robbery. (Traverse at 17.)

14

investigate the testimony of witnesses and physical evidence did not fall below the objective standard of reasonableness or outside the wide range of acceptable professional assistance. *See Id*.

Petitioner has also failed to demonstrate the prejudice factor required for a showing of ineffective assistance of counsel. Petitioner claims he would not have "taken any deal" on the robbery count had he known that the claims by the police were "not true." (Petition at 24-25.) His petition urges that "there would have been no reason for petitioner to enter his no contest plea" rather than assert his right to trial on the robbery charges. (Petition at 15.) The record belies this assertion. Petitioner's no contest plea on the robbery count did not stand alone; it was part of a package deal with respect to 27 counts, upon some of which he had already been convicted by a jury. Moreover, it resulted in the attribution of only one strike to petitioner, whereas he could have received multiple strikes if he had proceeded to trial. (RT at 16.) Prior to entry of the plea, the prosecutor detailed the factual bases for all 27 counts included in the amended consolidated complaint. (RT at 11-15.) Petitioner, through counsel, expressed his willingness to plead guilty to any combination of those charges in order to achieve the total number of years in the agreed-upon sentence:

> Your Honor, Mr. Torres and I have had lengthy discussions. He's also discussed it with his mother. I can tell the Court I've lived with this case for almost two years now and Mr. Torres and I have agreed that after -- in light of the first trial, and the People's offer to dismiss pending 273.5, that he would enter a plea agreement to where he would end up with a total aggregate sentence of 15 years, however we get there, and there would be one strike included with that.

(RT at 2.) Upon the record of this case, there is no reasonable probability that petitioner would have refused to plead and proceeded to trial on all pending charges had his attorney undertaken further investigation of the evidence.

/////

/////

VI. ANALYSIS OF PETITIONER'S DUE PROCESS CLAIM

Petitioner has also argued that his due process rights were violated when the pages of the sheriff's report containing fingerprint evidence from the robbery were destroyed. (Petition at 16.) This claim is separate from those relating to the voluntariness of his plea and the alleged newly discovered evidence. Petitioner entered his no contest pleas on April 1, 2003. (RT at 33.) At the sentencing hearing on May 21, 2003, the trial court directed that this evidence "be maintained in accordance with the standard procedure." (RT at 56.) A law clerk investigating the evidence for petitioner in connection with post conviction proceedings was informed in 2005 that the evidence had been destroyed. (Petitioner's Exhibits at 53-54.)

Due process standards require that criminal defendants be afforded a meaningful opportunity to present a complete defense, including "what might loosely be called the area of constitutionally guaranteed access to evidence." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982). In *California v. Trombetta*, the United States Supreme Court held that the government violates a defendant's right to due process if it destroys evidence that possessed "exculpatory value that was apparent before the evidence was destroyed [that is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." 467 U.S. 479, 489 (1984). In order to demonstrate a constitutional violation, the defendant must demonstrate that the police acted in bad faith in failing to preserve the potentially useful evidence. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).

Petitioner asserts that bad faith is manifest in this case since the police violated a direct court order to preserve the fingerprint evidence, which petitioner asserts was "the most crucial evidence" to both the prosecution's case and his defense. (Petition at 20.) However, "[t]he presence or absence of bad faith turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed." *United States v. Cooper*, 983 F.2d 928, 931 (9th Cir. 1993) (*citing Youngblood*, 488 U.S. at 56-57). In this case, there is no indication that the evidence had apparent exculpatory value at the time it was destroyed.

16

Evidence at the preliminary indicated that latent prints were found on the back and front pages of the four page sheriff's report left at the victim's house. (Supp. CT 306-09.) An identification technician testified that he was 100 percent positive that the fingerprints were petitioner's. (Supp. CT 312-15.) The fact that this fingerprint evidence was "potentially exculpatory," in that it could have been subjected to further tests, is not a sufficient showing of prejudice. *Grisby v. Blodgett*, 130 F.3d 365, 371 (9th Cir. 1997) (*citing Youngblood*, 488 U.S. at 57).

There is no basis for petitioner's speculation that the evidence had any exculpatory value or that there was any bad faith on the part of the prosecution in its subsequent destruction. Petitioner has failed to demonstrate a due process violation under the test set forth by the Supreme Court in *Trombetta* and *Youngblood*. Moreover, this is precisely the type of claim that is foreclosed by the fact that petitioner entered a no contest plea to the robbery charge, admitting his guilt for purposes of the case. *See supra*; *Tollett v. Henderson*, 411 U.S. at 267.

## VII.  CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 12, 2008

2

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE